UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

ISAIAH VALENTINE,

                Plaintiff,

v.

SARAH SCHROEDER, et al.,

                Defendants.

_____/

Case No. 2:24-cv-210

Honorable Phillip J. Green

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge.  (ECF No. 7.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility in St. Louis, Gratiot County, Michigan. The events about which he complains occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues MBP Warden Sarah Schroeder, and MBP Corrections Officers Unknown Party #1 and Unknown Party #2 in their individual and official capacities. (Compl., ECF No. 1, PageID.2–3.)

In Plaintiff's complaint, he alleges that on March 15, 2024, at 8:10 a.m., Defendants Unknown Parties #1 and #2 "failed to protect Plaintiff as two inmates were able to make it two hundred yards to Plaintiff's unit (Unit A) as the 'yard' [was] suppose[d] to [have] been closed, and attacked him with a padlock."[2] (*Id.*, PageID.5.) Plaintiff states that the "unprovoked attack" occurred while he was sleeping "during hours the yard was expected to be closed," and "the officers on duty at the time didn't investigate how . . . those (2) two inmates were able to cross the yard at closing times to attack [Plaintiff], as the facility did nothing." (*Id.*, PageID.8.) Plaintiff alleges that his injury was "caused by Defendant(s)' omission to secure [Plaintiff's] housing unit properly, as this incident was a direct result or reasonably probable consequence of Defendant(s)' failure and/or omission to do so." (*Id.*) Plaintiff states that he "fought

---

[2] In this opinion, the Court corrects the spelling, punctuation, and capitalization in quotations from Plaintiff's complaint.

for his life for what seemed like for hours from [the] two inmates, who[] somehow both managed to make it (200 yards) past of[ficers] to attack and assault [Plaintiff]." (*Id.*, PageID.5.)  Plaintiff alleges that the "inmate attackers [were] swinging padlocks," and "there was no one coming to his aid." (*Id.*)

After the incident, Plaintiff "was taken to have his left ear sewn back together," and "he immediately requested to see a neurologist because of so many blows he suffered to his head area." (*Id.*)  In response, Plaintiff alleges that "health care officials at MBP told him he'd be 'okay' [and] that '[he was] a big boy.'" (*Id.*)

Additionally, following the incident, Plaintiff was "held in solitary confinement for the next (33) thirty-three days with no visits from health care to follow-up on his condition, as he today, still has 'major' headaches [and] suffers with sensitivity to the slightest touch to his left ear." (*Id.*)  When Plaintiff was released from solitary confinement "no one responded to Plaintiff's request to have the officers on shift prior to, during, and after the incident investigated for dereliction/inattention of duty and health care investigated for failure to provide, obtain, or convey the need for medical aftercare attention." (*Id.*, PageID.6.)

Plaintiff claims that "the failure of the warden and yard of[ficers] #1 and #2 to protect Plaintiff from the unprovoked attack upon him" violated his rights under the Eighth Amendment and Fourteenth Amendment. (*Id.*)  Plaintiff also claims that the failure to provide him with adequate medical care violated his Eighth Amendment rights. (*Id.*)  Plaintiff seeks a declaratory judgment, as well as monetary damages. (*Id.*, PageID.6–7.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.    Although  the  plausibility  standard  is  not  equivalent  to  a  "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).   "[W]here the well-pleaded  facts  do  not  permit  the  court  to  infer  more  than  the  mere  possibility  of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a  right  secured  by  the  federal  Constitution  or  laws  and  must  show  that  the

deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities.  (Compl., ECF No. 1, PageID.2–3.)  A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages and declaratory relief.  (Compl., ECF No. 1, PageID.6–7.)  However, as noted above, the MDOC is not a "person" who may

7

be sued under § 1983 for money damages. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). A court should assume that, absent an official

policy or practice urging unconstitutional behavior, individual government officials
will act constitutionally. *Lyons*, 461 U.S. at 102.

In the present action, Plaintiff does not allege the existence of an official policy
or practice, or suggest that the activities alleged in the complaint are likely to occur
to him again. Instead, Plaintiff's allegations relate solely to past harm, not future
risk of harm. Moreover, the Sixth Circuit has held that transfer to another
correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu
v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims
for injunctive and declaratory relief became moot when the prisoner was transferred
from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL
59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir.
May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is
no longer confined at MBP, which is where he avers that Defendants are employed.
Thus, Plaintiff cannot maintain his claims for declaratory relief against Defendants,
and the Court will dismiss these claims.

Therefore, for these reasons, Plaintiff has failed to state a claim against
Defendants in their official capacities upon which relief can be granted. Accordingly,
Plaintiff's official capacity claims against Defendants will be dismissed for failure to
state a claim.

## B.    Defendant Schroeder

In this action, Plaintiff does not allege any facts to suggest that Defendant
Schroeder was personally involved in the alleged violations of Plaintiff's

constitutional rights; instead, Plaintiff seeks to hold Defendant Schroeder liable due to her supervisory position.  (*See generally* Compl., ECF No. 1.)

However, government officials, such as Defendant Schroeder, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *See Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  And, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, the factual allegations in the complaint, which are summarized above, are insufficient to show that Defendant Schroeder encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in the conduct.    And, any conclusory allegations of supervisory responsibility are insufficient to show that Defendant Schroeder was personally involved in the alleged violations of Plaintiff's constitutional rights.    *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888.

Therefore, for these reasons, Plaintiff fails to state any claim upon which relief may be granted against Defendant Schroeder.  Accordingly, Defendant Schroeder and Plaintiff's claims against her will be dismissed for failure to state a claim.

### C.    Eighth Amendment Claims

In this action, Plaintiff brings Eighth Amendment claims regarding the failure to protect him from the two inmate attackers and the failure to provide adequate medical care for his injuries after the March 15, 2024, incident.  (*See* Compl., ECF No. 1, PageID.6.)  The Court also construes Plaintiff's complaint to raise an Eighth Amendment claim regarding the conditions of his confinement during his thirty-three days in solitary confinement following the incident.  (*See id.*, PageID.5 (alleging that following the attack by the other inmates, Plaintiff was "held in solitary confinement for the next (33) thirty-three days").)  The Court addresses each claim in turn.

### 1.    Failure to Protect Claims

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates"

in their care.  *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).  In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners."  *Farmer*, 511 U.S. at 833.  A prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim; however, he must at least show that he reasonably fears such an attack.  *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

In order for a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993).  Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011).

Here, Plaintiff alleges that on March 15, 2024, at 8:10 a.m., Defendants Unknown Parties #1 and #2 "failed to protect Plaintiff as two inmates were able to make it two hundred yards to Plaintiff's unit (Unit A) as the 'yard' [was] suppose[d]

to [have] been closed, and attacked him with a padlock," explaining that the "unprovoked attack" occurred while he was sleeping "during hours the yard was expected to be closed," and "the officers on duty at the time didn't investigate how were those . . . two inmates . . . able to cross the yard at closing times to attack [Plaintiff], as the facility did nothing." (Compl., ECF No. 1, PageID.5, 8.)  Plaintiff alleges that his injury was "caused by Defendant(s)' omission to secure [Plaintiff's] housing unit properly, as this incident was a direct result or reasonably probable consequence of Defendant(s)' failure and/or omission to do so."  (*Id.*, PageID.8.) Plaintiff states that he "fought for his life for what seemed like for hours from [the] two inmates, who[] somehow both managed to make it (200 yards) past of[ficers] to attack and assault [Plaintiff]."  (*Id.*, PageID.5.)  Plaintiff claims that "there was no one coming to his aid."  (*Id.*)

Although Plaintiff alleges in a conclusory manner that Defendants Unknown Parties #1 and #2 "failed to protect" Plaintiff on March 15, 2024, as related to the incident with the other two inmates, as explained below, the *facts* alleged in the complaint fail to state such a claim.  As an initial matter, Plaintiff's only reference to Defendants by name is his conclusory assertion that they "failed to protect" him.  (*See id.*, PageID.5, 6.)  Throughout the rest of the complaint, Plaintiff refers only to "officers" or "Defendant(s)."  (*See generally id.*)  Plaintiff's conclusory allegation regarding Defendants' failure to protect him, without additional supporting facts showing how they were personally involved, is insufficient to state a claim.  And, Plaintiff's "[s]ummary reference to a single, five-headed 'Defendants' [or officers] does

13

not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)).

Moreover, even setting this issue aside and turning to the merits of Plaintiff's claims, he fails to state a claim against Defendants.  Plaintiff alleges that he "fought for his life for what seemed like for hours from [the] two inmates, who[] somehow both managed to make it (200 yards) past of[ficers] to attack and assault [Plaintiff]" and that "there was no one coming to his aid."  (Compl., ECF No. 1, PageID.5.)  Even assuming, without deciding, that Defendants Unknown Parties #1 and #2 were the "officers" on the yard when the other two inmates went "past," Plaintiff alleges insufficient facts to show that these officers actually saw the inmates when they walked by and that they knew the two inmates should not have been in Plaintiff's unit.  Although Plaintiff alleges that the yard was "suppose[d] to [have] been closed" and that the other two inmates came to Plaintiff's unit, it is not at all clear from Plaintiff's complaint that the other inmates should not have been in Plaintiff's unit, let alone that any officers knew that the inmates should not be there.  (*Id.*)  And, even if the other two inmates should not have been on Plaintiff's unit, Plaintiff alleges no facts to suggest that anyone had reason to know that the two inmates' presence posed any risk of harm.  Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim.  Plaintiff also alleges no *facts* to suggest that any officers, let alone Defendants, saw the attack occurring and then failed to intervene.  (*See generally id.*)

14

Additionally, later in the complaint, Plaintiff alleges in a conclusory manner that his injury was "caused by Defendant(s)' omission to secure [Plaintiff's] housing unit properly, as this incident was a direct result or reasonably probable consequence of Defendant(s)' failure and/or omission to do so."  (*Id.*, PageID.8.)   A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899.   However, this allegation suggests that, at most, Defendants acted negligently by not "properly" securing the unit; but, negligence is insufficient to support a § 1983 deliberate indifference claim. *See Farmer*, 511 U.S. at 837; (*see also* Compl., ECF No. 1, PageID.8.)

Plaintiff also alleges that the attack occurred "during hours the yard was expected to be closed," and "the officers on duty at the time didn't investigate how . . . those (2) two inmates were able to cross the yard at closing times to attack [Plaintiff], as the facility did nothing."  (*Id.*, PageID.8.)   Assuming, without deciding, that Plaintiff intended to reference Defendants Unknown Parties #1 and #2, these factual allegations suggest only that Defendants failed to investigate *after* the incident occurred to determine how the other inmates had made it across the yard, not that anyone, let alone Defendants, saw the two inmates as they crossed the yard.

Finally, the "fatal flaw" in Plaintiff's complaint is that he alleges that the attack was "unprovoked," suggesting that no one, let alone Defendants Unknown Parties #1 and #2, knew that Plaintiff faced any risk of harm from the two inmates prior to the attack.  (Compl., ECF No. 1, PageID.8.)

Under these circumstances, Plaintiff does not allege sufficient facts to suggest that he faced a substantial risk of harm from the other two inmates prior to the attack, let alone that Defendants knew that Plaintiff faced such a risk and disregarded it.  The Court does not minimize Plaintiff's experience; however for all of the reasons set forth above, Plaintiff fails to state an Eighth Amendment failure to protect claim against Defendants Unknown Parties #1 and #2.

### 2.    Medical Care Claims

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer*, 511 U.S. at 834.  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008)  The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

Here, Plaintiff alleges that he received inadequate medical care for his injuries following the March 15, 2024, attack.  Even assuming, without deciding, that Plaintiff has alleged sufficient facts to satisfy the objective component of the relevant two-prong standard, he alleges no facts to suggest that Defendants were involved in his receipt of medical care.  (*See generally* Compl., ECF No. 1.)  Instead, Plaintiff alleges

that in response to his request for additional medical treatment, "health care officials at MBP," not Defendants, "told him he'd be 'okay' [and] that '[he was] a big boy.'" (*Id.*, PageID.5.)  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant in a claim without an allegation of specific conduct, the claim is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Accordingly, an intended Eighth Amendment medical care claims against Defendants will be dismissed for failure to state a claim.

### 3.    Conditions of Confinement Claims

Similarly, to the extent that Plaintiff intended to raise an Eighth Amendment claim regarding the conditions of his confinement during his thirty-three days in solitary confinement, Plaintiff alleges no facts to suggest that Defendants were involved in, or had any knowledge of, Plaintiff's conditions of confinement during the period in question.  *See, e.g.*, *Frazier*, 41 F. App'x at 764; *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights).  Accordingly, any intended Eighth Amendment claims against Defendants regarding

the conditions of Plaintiff's confinement in solitary confinement will be dismissed for failure to state a claim.

### D.    Fourteenth Amendment Claims

#### 1.    Substantive Due Process Claims

When setting forth his claims, Plaintiff references alleged violations of his Fourteenth Amendment rights.  (*See* Compl., ECF No. 1, PageID.3, 6.)  To the extent that Plaintiff intended to raise a substantive due process claim regarding the events in the complaint, as explained below, he fails to state such a claim.

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).  Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).  "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, the facts alleged in the complaint fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim.  *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct

shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X*, 175 F.3d at 388; *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016).

Furthermore, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273–75 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment is the applicable constitutional protection for Plaintiff's failure to protect claims, medical care claims, and conditions of confinement claims.

Accordingly, for the foregoing reasons, Plaintiff's Fourteenth Amendment substantive due process claims will be dismissed.

### 2.    Procedural Due Process Claims

Finally, the Court generously construes Plaintiff's complaint to raise a Fourteenth Amendment procedural due process claim regarding his placement in solitary confinement following the March 15, 2024, incident.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves

two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  515 U.S. 472, 484 (1995).  According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).   In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life.  *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).  Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

As an initial matter, Plaintiff fails to allege any facts to show that Defendants were involved in his placement in solitary confinement following the March 15, 2024, altercation.  For this reason alone, Plaintiff fails to state a Fourteenth Amendment

procedural due process claim against Defendants regarding his placement in solitary confinement.  *See, e.g.*, *Frazier*, 41 F. App'x at 764; *Gilmore*, 92 F. App'x at 190.

Even setting this issue aside and turning to the merits of Plaintiff's claims, as to the first category of a procedural due process claim—the existence of a deprivation that will inevitably affect the duration of a prisoner's sentence—Plaintiff does not allege, nor can he allege, that his placement in solitary confinement affected the duration of his sentence.  Further, as to the second category, Plaintiff has not alleged that he suffered an "atypical and significant" deprivation.  *Sandin*, 515 U.S. at 484.  In *Sandin*, the Supreme Court concluded that placement in segregation for thirty days did not impose an atypical and significant hardship.  *Id.*  Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process.  *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that sixty-one days in segregation is not atypical and significant).  Here, Plaintiff alleges that he was in solitary confinement for thirty-three days, which is a period of time that is similar to the thirty days at issue in *Sandin*, and Plaintiff does not allege any other facts to suggest this placement was an "atypical" and "significant deprivation."  (Compl., ECF No. 1, PageID.5.)

Accordingly, for the foregoing reasons, Plaintiff fails to state a Fourteenth Amendment procedural due process claim.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court must next decide

whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore*, 114 F.3d at 611.  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  March 6, 2025                                    /s/ Phillip J. Green
                                                                     PHILLIP J. GREEN
                                                                     United States Magistrate Judge